**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MARTIN BERNARD PEARSON, | ) | NO. ED CV 17-563-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a Complaint on March 23, 2017, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on April 20, 2017.

Plaintiff filed a motion for summary judgment on August 25, 2017. Defendant filed a motion for summary judgment on September 26, 2017. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed March 28, 2017.

**BACKGROUND**

Plaintiff asserts disability since November 28, 2013, based on alleged physical and mental impairments including "bipolar depressive disorder" for which Plaintiff takes Lithium and Seroquel (Quetiapine) (Administrative Record ("A.R.") 29, 34-35, 39, 45, 58-59, 62, 129, 160, 163, 166, 194, 196, 202, 204, 242-43, 251).

On initial evaluation on March 12, 2014, and on reconsideration on June 10, 2014, non-examining state agency review physicians looked at some of the medical records and opined that Plaintiff has a severe affective disorder and, due to his depressive symptoms, has moderate limitations in his ability to: (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) ask simple questions or request assistance; and (4) accept instructions and respond appropriately to criticism from supervisors (A.R. 45-54, 60-65, 67-69). These physicians opined:

> [Plaintiff] retains the mental capacity for persisting, concentrating, and paying attention in the completion of simple, routine tasks on a sustained basis. He is able to relate to coworkers and supervisors on a brief and superficial level. He is able to adapt to routine changes

in a work setting.

(A.R. 54, 69). Reportedly, there were no opinions from any medical sources for the state agency physicians to review (A.R. 54, 64-65).

The Administrative Law Judge ("ALJ") gave "little weight" to the opinions of the state agency physicians and found that Plaintiff has no severe mental impairment (A.R. 16, 20).[1] In the absence of any supporting mental health medical opinions, the ALJ found that Plaintiff's retains a residual functional capacity for a limited range of light work with the following non-exertional abilities/limits:

> . . . capable of moderately complex tasks up to 4-6 steps;
> can attend work without significant limitation; no need for
> special supervision; can work in proximity to others without
> distraction; able to make moderately complex work-related
> decisions; there would be no interruption from
> psychologically based symptoms; ability to interact with
> supervisors, coworkers, and the general public limited to

---

[1] The ALJ reasoned that the state agency physicians' opinions were "internally inconsistent and overly restrictive," because: (1) Plaintiff has a college degree and assertedly worked in complex jobs until he received his "VA" (Department of Veteran's Affairs) disability; (2) the VA records allegedly show "minimal mental health treatment" and note that Plaintiff had a Global Assessment of Functioning ("GAF") score of 64 "which is near normal functioning"; and (3) Plaintiff assertedly declined psychological therapy one time (A.R. 20). The ALJ elsewhere stated that Plaintiff assertedly declined therapy until 2014, and his compliance with psychotropic medications allegedly was "questionable" because his Lithium assertedly "was below therapeutic values" (A.R. 21).

frequent, not constant.

(A.R. 18, 20 (adopting physical limitations found by orthopedic consultative examiner at A.R. 380-84)). The ALJ found that a person with this residual functional capacity could perform Plaintiff's past relevant work as a sales representative (A.R. 22 (adopting vocational expert testimony at 41-42)).

The ALJ denied benefits (A.R. 22-23). The Appeals Council denied review (A.R. 2-6).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.

> Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

Plaintiff asserts, <u>inter alia</u>, that the ALJ erred in connection with determining Plaintiff's mental residual functional capacity. For the reasons discussed herein, the Court agrees.

**A.   Summary of the Relevant Medical Record**

The record of Plaintiff's medical treatment consists of documentation from the Department of Veteran's Affairs ("VA") (A.R. 235-379). As detailed below, available VA treatment notes indicate that Plaintiff made psychiatric visits for medication management and "supportive" treatment from April 2012 through at least May 2014, at which time the VA found Plaintiff 100 percent mentally disabled (<u>id.</u>).

On April 17, 2012, Plaintiff presented to staff psychiatrist, Dr. Karole Avila (A.R. 291). Plaintiff reportedly was compliant with taking Lithium and Quetiapine as prescribed, and Plaintiff denied any anger, racing thoughts, hallucinations, or persistent mania or depression (A.R. 291). Dr. Avila diagnosed bipolar disorder, in remission, refilled Plaintiff's medications, and ordered Lithium level

testing (A.R. 291).

On October 22, 2012, Plaintiff returned, reporting he was "stable" and compliant with taking Lithium and Quetiapine as prescribed (A.R. 282-83). Mental status examination was normal except for a euthymic mood (A.R. 283). Dr. Avila diagnosed bipolar disorder, assigned a Global Assessment of Functioning ("GAF") score of 64, and continued Plaintiff's medications (A.R. 283).

On March 18, 2013, Plaintiff returned, reporting frustration, irritability, short temper, sadness, worry, and anger (A.R. 275-76). Plaintiff again reportedly was compliant with taking his medications (A.R. 276). Dr. Avila increased Plaintiff's Lithium dosage and ordered Lithium level testing (A.R. 276).

The next mental health treatment note is dated November 12, 2013, when Plaintiff presented to a nurse practitioner (A.R. 264-68). Plaintiff reported his mood was "fairly stable," but complained of persistent cognitive difficulties, irritability, and anger (A.R. 264-68). Plaintiff said he was taking Lithium and Quetiapine, which were continued as approved by Dr. Lynnetta Skoretz (A.R. 265, 267-68). Plaintiff was referred for psychotherapy and Lithium level testing (A.R. 266-67).

A follow-up mental health treatment note dated January 7, 2014, contains the same patient complaints as the November 12, 2013 note (A.R. 250-53). Plaintiff reportedly was taking Lithium and Quetiapine (A.R. 251-52). On testing, his Lithium level was "within the

therapeutic range" (A.R. 252). His provider discussed the need for psychotherapy and Plaintiff reportedly was "more open to that option" (A.R. 252). Again, Plaintiff's Lithium and Quetiapine were continued, and it was noted to consider adding either Bupropion or Abilify at the next visit (A.R. 253).

The next mental health treatment note is for an "initial" mental health treatment plan dated March 6, 2014, from a team of psychologists and a nurse practitioner (A.R. 361-63). Plaintiff reported hearing a voice commenting on his life when in a manic state, and said his mood had been unstable in that he was depressed and irritable (A.R. 362-63). The treatment team diagnosed bipolar disorder and indicated Plaintiff would have medication management as an intervention (A.R. 362-63).

On March 19, 2014, Plaintiff returned to a nurse practitioner for a follow-up evaluation (A.R. 347-51). Plaintiff reported his mood was "fairly stable" and his sleep quality was good, but he said he was not sleeping enough and was having persistent cognitive difficulties along with irritability and anger (A.R. 349). His last Lithium level was within the therapeutic range (A.R. 349). He had just started attending stress management classes (A.R. 349).[2] His Lithium was increased and his Quetiapine was continued (A.R. 350).

///

---

[2] Treatment notes indicate that Plaintiff attended group or individual psychotherapy or other mental health classes on March 14, 2014, March 21, 2014, March 28, 2014, April 4, 2014, April 11, 2014, April 25, 2014, and May 16, 2014 (A.R. 307-08, 310-11, 324-26, 344-47, 353-54).

7

On May 21, 2014, Plaintiff returned for a follow-up evaluation (A.R. 321-24). Plaintiff reported that his mood was more stable, sleep and short-term memory were better, and his anxiety was down since the last medication change (A.R. 322). He said he was still attending stress management classes and wanted to continue his medications (A.R. 323). His Lithium and Quetiapine were continued as approved by Dr. Skoretz (A.R. 323-24).

The VA issued a "Rating Decision" dated May 21, 2014, finding Plaintiff was entitled to "individual unemployability" with a 100 percent disability rating as of November 22, 2013, based on, <u>inter alia</u>: (1) a "VA psychiatric examination, dated November 5, 2013," which reportedly indicated Plaintiff's work hours had been reduced to six hours per week, and which reportedly showed Plaintiff has "difficulty in establishing and maintaining effective work and social relationships as well as difficulty in adapting to stressful circumstances, including work or a worklike setting"; (2) a "VA psychiatric examination dated January 3, 2014," which reportedly showed Plaintiff has symptoms of "near-continuous panic or depression affecting the ability to function independently, appropriately and effectively"; and (3) "[t]he bipolar disorder symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning" (A.R. 235-36). The two "psychiatric examinations" referenced above and in the VA Rating Decision appear to be absent from the Administrative Record.
///
///
///

See A.R. 242-379.³

B. **Substantial Evidence Does Not Support the ALJ's Mental Residual Functional Capacity Assessment.**

The ALJ's assessment of Plaintiff's mental limitations is not supported by substantial evidence in the present record. As summarized above, the state agency physicians found greater limitations than the ALJ found to exist, and the VA concluded that psychiatric examinations (which appear to be absent from the record) indicated Plaintiff has significant work-related limitations. The ALJ's assessment of Plaintiff's mental limitations is unsupported by any expert medical opinion.

The ALJ rejected the VA Rating Decision: (1) as assertedly based on Plaintiff's subjective complaints; (2) as purportedly not based on a doctor's residual functional capacity assessment; and (3) because of Plaintiff's "minimal treatment" for mental health. See A.R. 19. The Court observes the following regarding the ALJ's reasoning.

First, an ALJ sometimes may reject a treating physician's opinion if the opinion is based "to a large extent" on a claimant's properly discounted self-reports. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999). However, "the rule

---

³ In purporting to discuss these examinations, the ALJ cited "Exhibit 1F/10-13, 25-27," but the cited portions of the record do not include any November 5, 2013 examination or any January 3, 2014 examination (A.R. 19, 250-53, 265-67).

allowing an ALJ to reject [medical] opinions based on [the claimant's] self-reports does not apply in the same manner to opinions regarding mental illness." See Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). Second, as previously observed, two psychiatric evaluations on which the Rating Decision was based appear not to be included in the record. Third, Plaintiff's mental health treatment, which included prescribed Lithium and Seroquel, appears to have been greater than "minimal" treatment. Courts have recognized that the prescription of Lithium and Seroquel connotes mental health treatment which is not "conservative" within the meaning of social security jurisprudence. Compare Barrino v. Berryhill, 2017 WL 977670, at *5, 7, 9 (E.D. Cal. Mar. 14, 2017) (where plaintiff was diagnosed with bipolar disorder and prescribed Lithium, attended regular counseling sessions, and had Transcranial Magnetic Stimulation, his treatment was "far from conservative"); Garrett v. Berryhill, 2017 WL 950467, at *8 & n.6 (E.D. Cal. Mar. 10, 2017) (treatment with psychotropic drugs including Seroquel was not routine or conservative); Sandberg v. Commissioner of the Social Sec. Admin., 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine such as Lithium is certainly not conservative in the same manner as over-the-counter pain relievers.") (distinguishing Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008)); Johnson v. Colvin, 2014 WL 2586886, at *5 (C.D. Cal. June 7, 2014), adopted, 2014 WL 2589777 (C.D. Cal. June 7, 2014) (prescription of Seroquel is not "conservative" mental health treatment). These flaws in the ALJ's reasoning prevent the Court from upholding the ALJ's rejection of the VA Rating Decision on the present record. See McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (ALJ may give less than "great

weight" to a VA disability rating only if the ALJ states "persuasive, specific, valid reasons for doing so that are supported by the record").

There are no medical source opinions supporting the conclusion that Plaintiff possesses the mental functional capacity the ALJ found to exist. Instead, the ALJ appears to have relied on his own non-medical lay opinion to define Plaintiff's functional capacity. An ALJ cannot properly rely on the ALJ's own lay knowledge to make medical interpretations of examination results or to determine the severity of medically determinable impairments. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). Absent expert medical assistance, the ALJ could not competently translate the medical evidence in this case into a mental residual functional capacity assessment. See Tackett v. Apfel, 180 F.3d at 1102-03 (ALJ's residual functional capacity assessment cannot stand in the absence of evidentiary support); Rohan v. Chater, 98 F.3d at 970 ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d at 1156 (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

Rather than adopting his own lay assessment of Plaintiff's limitations, the ALJ should have ordered an examination and evaluation of Plaintiff by a consultative mental health specialist. See id.; see also Reed v. Massanari, 270 F.3d 838, 843 (9th Cir. 2001) (where

available medical evidence is insufficient to determine the severity of the claimant's impairment, the ALJ should order a consultative examination by a specialist); accord, Kish v. Colvin, 552 Fed. App'x 650 (2014); see generally Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the record further is triggered "when there is ambiguous evidence or when the record is inadequate to allow for the proper evaluation of the evidence") (citation omitted); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("[T]he ALJ has a special duty to fully and fairly develop the record to assure the claimant's interests are considered. This duty exists even when the claimant is represented by counsel.").

The Court is unable to deem the errors in the present case to have been harmless. See Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate non-disability determination") (citations and quotations omitted); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error"). While the initial and reconsideration disability determinations suggest that a person with the limitations the state agency physicians found to exist could perform other work (referencing the grids), no vocational expert testimony addresses this suggestion. See A.R. 41-43 (vocation expert testimony); see also

Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000) ("When a claimant suffers from both exertional and nonexertional limitations, the grids are only a framework and a [vocational expert] must be consulted.").

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the errors discussed herein. McLeod v. Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"). There remain significant unanswered questions in the present record.

///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[4] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 25, 2017.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014).